

**Arnold B. Calmann**
Direct Dial: (973) 645-4828
Email: abc@saiber.com

December 19, 2014

**BY ECF & FEDERAL EXPRESS**

Hon. Esther Salas, U.S.D.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building and U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

    Re:   *Mylan Pharmaceuticals, Inc. v. Celgene Corporation*
            Civil Action No. 14-2094 (ES) (MAH)

Dear Judge Salas:

    Our firm, along with Wilson Sonsini Goodrich & Rosati, represents plaintiff Mylan Pharmaceuticals Inc. ("Mylan") in the above matter.

    We respectfully request the Court's indulgence in accepting this brief letter in reply to Celgene's responsive letter (Dkt. 52) concerning the impact of the *Namenda* decision on Celgene's pending Motion to Dismiss in this matter. Unfortunately, Celgene's five page, single-spaced letter ignores both the relevant law and allegations in the Complaint, as well as the scope of the Court's review on a Motion to Dismiss, thus compelling this response.

    *First*, concerning the issue of concerted action (Dkt. 52 at 2-3), Celgene continues to ignore the principle, applied by *Namenda* and relied on in Mylan's briefing and the FTC amicus brief in this case, that all Section 1 of the Sherman Act requires is identification of 1) a "contract, combination . . ., *or* conspiracy" (15 U.S.C. § 1 (emphasis added)) among separate actors that 2) unreasonably restrains trade. *See Namenda*, Dkt. No. 80 at 122-26; Dkt. 24 at 27-30; Dkt. 26 at 17-19. *See also Fineman v. Armstrong World Indus.*, Inc., 980 F.2d 171, 212-15 (3d Cir. 1992).

    At the pleading stage, direct identification of the agreement (here, the distribution contracts) suffices to discharge the pleading burden. *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010). The allegation that the distributors agreed not to sell to qualified generics as part of their distribution agreements with Celgene suffices to identify a vertical restraint subject to Section 1 scrutiny. That agreement itself comprises the unity of purpose and meeting of the minds to which the cases refer. *See Harold Friedman Inc. v.*

Hon. Esther Salas, U.S.D.J.
December 19, 2014
Page 2

*Thorofare Markets Inc.*, 587 F.2d 127, 143 n.64 (3d Cir. 1978) (contractual distribution term "embodied" agreement).

More is required only in cases where there is no direct evidence of agreement, not where, as here, there are direct allegations of agreement. Celgene's arguments that Mylan has failed to allege concerted action therefore depend on an assumption that it and its distributors are a single entity, incapable of agreement, which the *Namenda* opinion shows is flatly inconsistent with *American Needle*.  Nothing in the Complaint shows facts supporting a single-entity defense or circumstances (such as a true agency relationship) that would otherwise suggest that Celgene and its distributors cannot conspire as a matter of law.  *Cf. Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1134-35 (3d Cir. 1994) (true agency relationship precluded concerted action finding); *Harold Friedman, Inc. v. Kroger Co.*, 581 F.2d 1068, 1075 (3d Cir. 1978) (no concerted action where one party actively attempted to undermine restraint).  *Accord Thorofare*, 587 F.2d at 143 n.64 (distinguishing *Kroger*).

*Second*, as to exclusionary conduct (Dkt. 52 at 4-5), the issue for decision here is whether Mylan's Complaint plausibly alleges actions by Celgene that make no economic sense without consideration of the impact of the actions on rivals.  *See Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608 (1985)).  That is the "objective" inquiry for the Court at this stage.

Here, Mylan has directly alleged that it satisfied every reasonable concern Celgene could have by securing FDA approval for its protocols and offering indemnification to Celgene, in addition to paying full price for the samples, and that all of Celgene's proffered rationales are simple pretext for a desire to prevent a competitor from entering the market.  The *Namenda* opinion illustrates the plausibility of that contention.  *See Namenda*, Dkt. No. 80 at 70-75 & 118-20.  It thus supports denial of Celgene's motion to dismiss so that a full factual record on the purpose and effect of Celgene's conduct may be developed.

*Third*, on market definition (Dkt. 52 at 3-4), Celgene continues to present jury arguments despite the early stage of this case.  *Namenda* (along with multiple other cases) shows that a single pharmaceutical product may constitute a relevant market, i.e., that such a market is plausible.  *See Namenda*, Dkt. No. 80 at 104.  It rejects the proposition that a single pharmaceutical product market is improper as a matter of law, which is a necessary predicate to accepting Celgene's relevant market arguments.  The Court should thus follow the rule that courts ordinarily will not determine the issue of relevant market at the motion to dismiss stage and deny Celgene's motion to dismiss here.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (Sotomayor, J.).

Hon. Esther Salas, U.S.D.J.
December 19, 2014
Page 3

      We thank the Court for its consideration of this matter.

                                         Respectfully submitted,

                                         Arnold B. Calmann

ABC/jbh

cc: Counsel of record (by ECF & email)