**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **MYLAN PHARMACEUTICALS INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 14-2094 (ES)(MAH)** |
| **v.** | : | |
| | : | **OPINION** |
| **CELGENE CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

SALAS, DISTRICT JUDGE

Plaintiff Mylan Pharmaceuticals Inc. ("Mylan") appeals Magistrate Judge Hammer's (the "Magistrate Judge") order, (D.E. No. 128 ¶ 4), denying Mylan's motion to compel certain discovery. Mylan appeals under 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Civil Rule 72.1(c)(1). Defendant Celgene Corporation ("Celgene") opposes Mylan's appeal. The Court decides Mylan's appeal without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court AFFIRMS the Magistrate Judge's discovery order.

## I.      Relevant Background of this Action

On April 3, 2014, Mylan brought this antitrust action against Celgene. The products-at-issue are two Celgene brand-name drugs called Thalomid® and Revlimid®. "Thalomid is the branded version of the pharmaceutical thalidomide; Revlimid is the branded version of the pharmaceutical lenalidomide." (D.E. No. 1 ¶ 3). Mylan, a generic pharmaceutical company, alleges that "Celgene has unlawfully maintained monopolies" over these two products "by preventing lower-priced generic competition from entering the market." (*Id.* ¶ 2; *see also id.* ¶ 9). Pursuant to the Hatch-Waxman Act—which is "designed, in part, to encourage generic

competition"—a generic pharmaceutical company "can seek FDA approval for a generic version of a branded drug product" if the generic company "demonstrate[s] bioequivalence" to the branded drug.  (*Id.* ¶ 6).  According to Mylan, "ordinarily, a generic manufacturer can obtain the necessary samples of [a branded drug] for bioequivalence testing through normal distribution channels."  (*Id.*).

Mylan alleges, however, that a generic company "may not do so for Thalomid and Revlimid because of [Celgene's] respective REMS programs for these drugs."  (*Id.*; *see also id.* ¶ 4).  The "REMS programs" refer to "Risk Evaluation and Mitigation Strategies" programs that Celgene developed to meet the FDA's requirement "to ensure that there were appropriate safeguards in the use and distribution" of Thalomid® and Revlimid®.  (*Id.* ¶ 4).  Indeed, the "FDA imposed rigorous restrictions on the distribution of Thalomid and Revlimid," and "access to these drugs is highly restricted."  (*Id.*).

But Mylan alleges that Celgene "has used REMS *as a pretext* to prevent Mylan from acquiring the necessary samples to conduct bioequivalence studies, even after the FDA determined that Mylan's safety protocols were acceptable to conduct those studies."  (*Id.* ¶ 7 (emphasis added)).  Mylan asserts that "[t]he effect of Celgene's conduct is that no generic manufacturer, including Mylan, has been able to bring generic versions of Thalomid and/or Revlimid to market."  (*Id.* ¶ 9).

Indeed, Mylan alleges that, "[b]ut for Celgene's anticompetitive conduct, consumers and federal, state, and private payors would have enjoyed the benefits of lower-priced generic competition years earlier."  (*Id.* ¶ 168).  Mylan claims that "Celgene's anticompetitive practices have had a direct, substantial and adverse effect on Mylan and competition by monopolizing and maintaining monopoly power, artificially creating barriers to entry, and foreclosing competition

in the [Relevant Markets]." (*Id.* ¶ 165). In other words, according to Mylan, "Celgene's anticompetitive conduct has impeded and continues to delay the sale of generic [versions of these drugs] in the Relevant Markets." (*Id.* ¶ 167). Mylan appears to define the "Relevant Markets" as "the Thalidomide Market and Lenalidomide Market." (*Id.* ¶ 51).

Notably, Mylan expects Celgene to argue that the relevant market is broader than Mylan claims and, further, that Celgene lacks monopoly power over these drugs. (D.E. No. 140-1 ("Mylan Appeal Br.") at 3-4). Mylan also points to this Court's ruling on Celgene's motion to dismiss, (*id.* at 4), where this Court "decline[d] to find Mylan's market definition legally insufficient on its face because there are factual questions that must be resolved" and ruled that "[d]iscovery is needed to determine, among other things, whether these allegations are true or whether, as Celgene contends, other products serve as adequate market substitutes," (12/22/14 Tr. at 29:17-30:2).

Purportedly in light of this, Mylan sought discovery from Celgene of "certain transactional and pricing data for Thalomid and Revlimid." (Mylan Appeal Br. at 4). As further detailed below, Celgene objected on relevance and burden grounds. Mylan then moved to compel production from Celgene of the data for Thalomid® and Revlimid® from 2003 onwards, and Celgene opposed. (D.E. 103; *see also* Mylan Appeal Br. at 10).

## II.     The Magistrate Judge's Ruling

On October 5, 2015, the Magistrate Judge held a hearing on the parties' various discovery disputes (the "October 5 hearing"), including the dispute involving Mylan's request for Celgene's transactional sales data. After considering the parties' joint submission on this issue and hearing oral argument, (*see* D.E. No. 103; 10/5/15 Tr. at 35:14-56:7), the Magistrate Judge ruled, in relevant part, as follows:

*I am not prepared to say that the information that Mylan seeks is totally irrelevant under Rule 26.* And to be clear what Mylan's asking for is transactional pricing data going back to -- it is 2003 now, which also corresponds, as [Mylan's counsel] acknowledged, with the introduction into the market of Velcade.[1] I am not prepared to say that that's totally -- because I assume there is some means by which that may bear on a developing market summary and market power going forward. That has some effect or downstream effect on Celgene's market share in -- or its pricing does and profitability does in 2005, for example, on its market share in 2009, but it's also the case that this is a dynamic market with at least, the defense argues, as many as 25 other competitors to Thalomid and Revlimid. And so it is difficult to understand how pricing, for example, in 2005, much less 2003, on Revlimid is a necessary determinant of market share 7 years later.

. . . .

*I have a hard time understanding how pre-October 2009, pricing would be a determinant of market power, at least so as to render this discovery relevant to overcome the undue burden that Celgene has asserted. And I do take [Celgene counsel's] word as an officer of the court that the pre-October 2009 data is stored on a legacy system, access to which or at least to cull out the records here, would give rise to undue burden.* In view of that, it strikes the Court that to the extent the -- that Mylan wants more information regarding market share which is relevant, Mylan already has at its disposal other means to do so that don't threaten to impose undue burden or delay the completion of discovery . . . . And so when I balance the -- and -- and Celgene has already agreed to produce the TPD or transactional and pricing data from 6 months before the statute of limitations, which I would calculate to be somewhere in or around October 2009 . . . .

So in any event, it would be from the inception of the current system through the limitations period. . . . [I]t strikes the Court that the October 2009 data going forward, plus the IMS data and other third-party sources at Mylan's disposal are sufficient from a discovery standpoint to suit its needs here. *I cannot find that the transactional and pricing data, particularly in such a granular level for a period before the statute of limitations is so significant to Mylan's ability to show market share as to overcome the burden*

---

[1] Velcade is a product that, according to Mylan, Celgene has identified "as an example of a competitive constraint on Celgene's ability to raise prices or continue charging monopoly prices for its Thalomid product and later its Revlimid product." (D.E. 103 at 8).

> *that Celgene has displayed. Therefore, subject to Celgene supplementing its production to include all post-legacy system data, I'm going to deny Mylan's request for any additional information at this time.*

(10/5/15 Tr. at 56:8-58:17 (emphases added)).

On October 20, 2015, the Magistrate Judge issued an order that "Plaintiff's application to compel the production of transactional data before Defendant's implementation of its Oracle post-legacy system be and hereby is DENIED."  (D.E. No. 126-1 ¶ 4).  Mylan appeals from the October 20 order denying Mylan's request to compel the data—which corresponds to Celgene's transactional sales data from the period between 2003 and a portion of 2009.  (*See* Mylan Appeal Br. at 1).

## III.   The Parties' Arguments

### A.  Mylan

On appeal, Mylan argues that the following two errors infect the Magistrate Judge's ruling.

*First*, Mylan argues that—because the Magistrate Judge's ruling "misapprehends the legal significance of the data requested" and fails to find the requested data "highly relevant"— his ruling is contrary to law under Federal Rule of Civil Procedure 72(a).  (Mylan Appeal Br. at 1-2, 11).  As noted, Mylan seeks "certain transactional and pricing data" for Thalomid® and Revlimid® for the period between 2003 and 2009.  (*Id.* at 4; D.E. No. 153 ("Mylan Reply Br.") at 2).[2]  Mylan argues that the requested discovery "is the type of information courts routinely use to evaluate market power" and is probative of the "durability of Celgene's market power." (Mylan Appeal Br. at 8-9).

---

[2] Although Mylan does not say as much, it does not rebut Celgene's characterization that this is "pharmacy-level transactional" data.  (*See* D.E. No. 150 at 1, 8).

In particular, Mylan avers that the "price reaction" of Thalomid® and Revlimid® when supposedly competing drugs entered the market indicates "to what extent, if any," the supposedly competing drugs "act as economic substitutes" for Thalomid® and Revlimid®. (*Id.* at 8). Mylan seems to argue that this is probative of market power and the definition of the relevant market because the absence (or presence) of price reaction suggests market power (or lack thereof) and informs the relevant market definition. (*See id.* at 8-9 (citing cases)).[3] And Mylan asserts that it cannot explore this "without pricing data from at least the time [that] the earliest product Celgene claims restrains Thalomid and Revlimid pricing (Velcade) entered the market in 2003." (*Id.* at 9).

Mylan further contends that the Magistrate Judge "mistakenly identified 2009 as the relevant time for assessing Celgene's monopoly power"—which it argues was based on Celgene's statute-of-limitations contention—because the "exclusionary conduct against Mylan began in 2004" when it sought samples of Thalomid®. (*Id.* at 9-10).[4] So Mylan claims it "needs transactional data from 2003 forward to determine to what extent Celgene exercised monopoly over the relevant market at the time Mylan first sought samples from Celgene." (*Id.* at 10). And Mylan avers that the availability of "highly aggregated data" from third-party sources—which the Magistrate Judge suggested mitigates against production of the requested data—"cannot

---

[3] For a claim under either § 1 or § 2 of the Sherman Act, defining the market is a necessary element. *See Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp.*, 579 F.2d 20, 26 (3d Cir. 1978). Further, for a claim under § 2 of the Sherman Act, "monopoly power in the relevant market" is a necessary element. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 480-81 (1992) (stating that an element of the "offense of monopoly under § 2 of the Sherman Act" includes "the possession of monopoly power in the relevant market" and, further, that "[m]onopoly power under § 2 requires, of course, something greater than market power under § 1" (citations omitted)).

[4] Mylan cites its complaint for the 2004 timeframe, (Mylan Appeal Br. at 10), where Mylan alleges that it unsuccessfully tried to obtain Thalomid® samples through "normal wholesale distribution channels" and from Celgene. (*See* D.E. No. 1 ¶ 75).

substitute for the granular, real-world data that comes from having detailed information about each sales transaction." (*Id.* at 10).

*Second*, Mylan argues the Magistrate Judge accepted Celgene's "brand-new" undue burden claim made at the October 5 hearing and this "aspect of the discovery decision was 'clearly erroneous'" under Federal Rule of Civil Procedure 72(a). (*Id.* at 2). Mylan states that Celgene never raised any burden objection based on its 2009 computer system change before the October 5 hearing. (*Id.* at 4-5). More specifically, Mylan contends that Celgene made no mention of its pre-2009 record-keeping system—i.e., storage on a legacy computer system—in its objections and responses to Mylan's discovery requests. (*Id.* at 12; *see also* D.E. No. 150 ("Celgene Opp. Br.") at 1, 13). In fact, Mylan states that neither in the meet-and-confer process nor the parties' joint discovery submission to the Magistrate Judge did Celgene advance any such burden argument. (Mylan Appeal Br. at 12). Rather, Mylan contends that Celgene argued—"*[f]or the first time ever*" during the October 5 hearing—that the requested discovery was burdensome. (*Id.* at 5 (emphasis in original)).

So, Mylan argues that Celgene "waived" the basis for its burden claim "by *never* raising the issue before oral argument" and "effectively abandoned its burden claim" by failing to raise the basis for its burden in its initial discovery objections, the meet-and-confer process, or in the briefing to the Magistrate Judge. (*Id.* at 2 (emphasis in original) (citation omitted); *see also id.* at 12).

In sum, Mylan argues that either error requires reversing the Magistrate Judge's ruling and that this Court should order Celgene to produce the requested transactional data. (*See id.* at 3).

### B.  Celgene

For its part, Celgene characterizes Mylan's position as follows: Mylan seeks to prove that Celgene "possessed monopoly power over alleged 'relevant markets'" for Thalomid® and Revlimid®—and, therefore, requested "Celgene's pharmacy-level transactional data." (Celgene Opp. Br. at 1).  Celgene avers that—although the statute of limitations restricts Mylan to recovering damages to the "four-year time period before Mylan brought suit on April 3, 2014"— Mylan seeks transactional data concerning Celgene's sales of Thalomid® and Revlimid® to individual pharmacies well before 2009.  (*Id.* at 1-2; *see also id.* at 5).  And Celgene notes that it produced data for the four-year period, but objected to producing older data because it would not be "reasonably accessible" or "overly burdensome."  (*Id.* at 2 (quoting Celgene's response to Mylan's discovery request)).

In opposing Mylan's appeal, Celgene disputes several of Mylan's contentions.  *First*, Celgene contends that Mylan appears to incorrectly posit that the Magistrate Judge found the discovery-at-issue irrelevant.  (*Id.* at 5).  Celgene argues that the Magistrate Judge instead found that the "potential relevancy was limited and was not sufficient to justify the burden of its production." (*Id.* at 6).  *Second*, Celgene argues that Mylan misleads when it argues that courts have rejected the use of aggregate data from third-party sources.  (*Id.* at 9).  Celgene states that Mylan "failed to explain to the Magistrate Judge why it needs *Celgene's pharmacy-level transactional data*, when other data about prices, market shares, and sales are readily available." (*Id.* at 8 (emphasis in original)).  *Third*, Celgene avers that the Magistrate Judge properly weighed the burden of producing the pre-2009 transactional data against its "marginal significance"—which was required under Federal Rule of Civil Procedure 26.  (*Id.* at 10).  So, Celgene asserts that the burden issue was never waived because the Magistrate Judge was

required to consider burden under Federal Rule of Civil Procedure 26 no matter what and, in any event, judges have discretion to consider arguments raised for the first time during a hearing. (*Id.* at 11-12).

In sum, Celgene argues that the Magistrate Judge's ruling regarding "pre-2009 transactional data falls well within his broad discretion to manage discovery."   (*Id.* at 4). Celgene characterizes the Magistrate Judge's ruling as follows: (1) that pre-2009 data was of limited relevance to this case; (2) Mylan has access to other sources of information concerning the pre-2009 market; and (3) it would be highly burdensome for Celgene to produce the pre-2009 data based on computer system storage.  (*Id.* at 1; *see also id.* at 3).

## IV.    Standard of Review

A federal magistrate judge may hear and determine any non-dispositive pretrial matter pending before the court.  *See* 28 U.S.C. § 636(b)(1)(A).   A magistrate judge's decision regarding discovery is a non-dispositive matter under § 636(b)(1)(A).  *Schiano v. MBNA*, No. 05-1771, 2009 WL 1416040, at *2 (D.N.J. May 19, 2009).

Section 636(b)(1)(A) provides, however, that a district judge "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."   Similarly, Federal Rule of Civil Procedure 72(a) provides that, for non-dispositive matters, the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *See also* L. Civ. R. 72.1(c)(1)(A).  So, "the proper standard of review for discovery orders is the 'clearly erroneous or contrary to law' standard."  *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (citation omitted).

The district judge "is bound by the clearly erroneous rule in reviewing questions of fact." *Haines*, 975 F.2d at 91.  "A finding is considered 'clearly erroneous' when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. 12-3289, 2014 WL 1494592, at *7 (D.N.J. Apr. 16, 2014) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).   Notably, a district judge may not take into consideration any evidence that was not put forth before the magistrate judge when reviewing the magistrate judge's factual determination.  *See Haines*, 975 F.2d at 91 ("[T]he district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact.").  Further, when reviewing factual determinations, "the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently." *Monaco v. City of Camden*, No. 04-2406, 2007 WL 2139420, at *3 (D.N.J. July 23, 2007) (citation omitted).

"[T]he phrase 'contrary to law' indicates plenary review as to matters of law." *Haines*, 975 F.2d at 91.  "A decision is considered contrary to law if the magistrate judge has 'misinterpreted or misapplied applicable law.'" *Merck Sharp & Dohme*, 2014 WL 1494592, at *7 (quoting *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006)).

Finally, "[t]he burden is on the party filing the notice of appeal to demonstrate that the magistrate judge's decision was clearly erroneous or contrary to law." *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 09-571, 2013 WL 322595, at *2 (D.N.J. Jan. 22, 2013) (citation omitted).

## V.     Discussion

### A.  The December 2015 Amendment to Federal Rule of Civil Procedure Rule 26

As a preliminary matter, this appeal implicates Rule 26, which was amended on December 1, 2015.  But Mylan's motion to compel, (D.E. No. 103), the Magistrate Judge's bench ruling and order, (D.E. Nos. 119 & 128), and Mylan's appeal, (D.E. No. 140), all occurred before the December 1, 2015 Amendment.

Before December 1, 2015, Rule 26(b)(1) stated that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Former Fed. R. Civ. P. 26(b)(1).  Further, Rule 26(b)(2)(C) stated, in relevant part, that:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Former Fed. R. Civ. P. 26(b)(2)(C)(iii).

Now, however, Rule 26(b)(1) states that

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

This Amendment, among others, took effect on December 1, 2015, "and shall govern in all proceedings in civil cases thereafter commenced and, *insofar as just and practicable, all*

*proceedings then pending.*"   Supreme Court Order, at 3 ¶ 2 (U.S. Apr. 29, 2015) (emphasis added)[5]; *see also* 28 U.S.C. § 2074(a); Fed. R. Civ. P. 86(a)(2).   Moreover, as courts have noted, the proportionality and burden requirements were part of former Rule 26.   *See, e.g.*, *Gilead Scis., Inc. v. Merck & Co.*, No. 13-4057, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("Proportionality in discovery under the Federal Rules is nothing new. Old Rule 26(b)(2)(C)(iii) was clear that a court could limit discovery when burden outweighed benefit . . . . New Rule 26(b)(1), implemented by the December 1, 2015 amendments, simply takes the factors explicit or implicit in these old requirements to fix the scope of all discovery demands in the first instance.").[6]   Accordingly, the Court finds that the Magistrate Judge's ruling in this case is not rendered moot or otherwise affected simply based on the December 2015 Amendment to Rule 26.

### B.  The Magistrate Judge's Order Must Be Affirmed

To reiterate, the parties seem to agree that the Magistrate Judge found Mylan's requested discovery at least somewhat relevant; they seem to disagree on appeal, however, as to the degree of relevance and, moreover, the effect that this has.   In particular, Mylan argues that "the Magistrate Judge's failure to appreciate the full relevance of the requested data constituted error as a matter of law."   (Mylan Reply Br. at 3).   Mylan asserts that the Magistrate Judge

---

[5] Available at http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf.

[6] *See also Pertile v. Gen. Motors, LLC*, No. 15-518, 2016 WL 1059450, at *2 (D. Colo. Mar. 17, 2016) ("Although this case was initiated prior to December 1, 2015, this court applies the principles of proportionality as discussed above because they are the same principles that would have applied through the former Rule 26(b)(2)(C)(iii)."); *Dao v. Liberty Life Assurance Co. of Bos.*, No. 14-4749, 2016 WL 796095, at *3 (N.D. Cal. Feb. 23, 2016) ("[W]hile the language of the Rule has changed, the amended rule does not actually place a greater burden on the parties with respect to their discovery obligations, including the obligation to consider proportionality, than did the previous version of the Rule."); *Gowan v. Mid Century Ins. Co.*, No. 14-5025, 2016 WL 126746, at *5 (D.S.D. Jan. 11, 2016) ("[T]he proportional requirement was already a part of Rule 26, it was just codified previously in subsection (c). Most of what appeared in subsection (b)(2)(C) of old Rule 26 has been in effect for the last 32 years, since 1983, so it is hardly new. Thus, as to this particular change, the only change rendered by the amendment was to move the proportional requirement from subsection (b)(2)(C) up to subsection (b)(1)." (internal citation omitted)).

"committed clear error in failing to hold that the data was *highly relevant*."  (Mylan Appeal Br. at 11 (emphasis added)).  So Mylan argues that the Magistrate Judge "therefore performed the balancing of relevance and burden required under Rule 26 *based on an erroneously narrow view of the relevance of the requested discovery*."  (*Id.* (emphasis added)).

In opposition, Celgene argues that the Magistrate Judge "made no error of law," that "[h]e heard and analyzed Mylan's arguments concerning relevance," and that "his finding, that the limited relevance was outweighed by the burden on Celgene, was an exercise of discretion subject to review under a 'clearly erroneous' standard."  (Celgene Opp. Br. at 6 n.2).

Again, as Mylan itself concedes, the Magistrate Judge did not find the requested discovery irrelevant.  (*See* Mylan Reply Br. at 3).  Further, Mylan does not dispute that the Magistrate Judge performed a balancing of relevance and burden that was required under Rule 26.  (*See* Mylan Appeal Br. at 11).  And, even if this Court performed a plenary review of the relevance of the requested data, this balancing would still be required.  So, Mylan effectively wants this Court to review Mylan's relevance argument *de novo* because the Magistrate Judge did not find the requested data "highly relevant," perform the required Rule 26 balancing based on a "highly relevant" finding, and ultimately rule in favor of Mylan—all on appeal from a magistrate judge's discovery order.

But "the District Court accords 'particular deference . . . to magistrate judges on discovery issues.'"  *Rapaport v. Robin S. Weingast & Assocs., Inc.*, No. 11-2254, 2013 WL 6022441, at *2 (D.N.J. Nov. 13, 2013) (alteration omitted) (quoting *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 315 (D.N.J. 2009)).  Indeed, where "the magistrate [judge] has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion."  *Kresefky v. Panasonic Commc'ns &*

*Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) (citation omitted); *see also C.G. v. Winslow Twp. Bd. of Educ.*, No. 13-6278, 2015 WL 3794578, at *2 (D.N.J. June 17, 2015) ("[S]ince the magistrate judge is fully involved with the facts and record of the case, district judges give significant deference to a magistrate judge's discovery rulings." (citations omitted)).

Given this backdrop, for the following reasons, the Court finds that the Magistrate Judge did not err as a matter of law, commit clear error, or abuse his discretion in finding that the relevance of the data was insufficient to overcome the undue burden Celgene demonstrated.

Mylan argues that its cited case law "treated *competitive responses* to new entry as *highly relevant* to assessing market power." (Mylan Reply Br. at 3 (emphases added)). But the Court is not persuaded that such "competitive responses"—which Mylan seems to be equating with granular, pharmacy-level transactional and pricing data—is the *only* means to assess market power. *See, e.g.*, *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 190 (3d Cir. 2005) ("An increase in pricing is *another factor* used in evaluating existence of market power." (emphasis added)). In other words, Mylan does not contend that Celgene's pharmacy-level transactional data between 2003 and 2009 is the only way to measure competitive responses to new entry.[7] So the relevance of Celgene's pharmacy-level transactional between 2003 and 2009—which was recognized by the Magistrate Judge—cannot be looked at in a vacuum.

This is important because Celgene asserts that "Mylan conceded to the Magistrate Judge that it would access third-party data services for information on market share and sales." (Celgene Opp. Br. at 8 (citing 10/5/15 Tr. at 47:7-9)). In reply, Mylan states that "the concern [is] that such highly aggregated data *may* well raise analytical problems that cannot be foreseen at this time (prior to expert discovery)." (Mylan Reply Br. at 5 (emphasis added)). But this is

---

[7] Moreover, as Celgene notes (and Mylan does not dispute), the cases that Mylan relies upon all involve entry of competitor products within the statute-of-limitations period. (*See* Celgene Opp. Br. at 7; Mylan Reply Br. at 3).

speculative, and the Court agrees with Celgene, (*see* Celgene Opp. Br. at 9), that Mylan has not shown (at least yet) the inadequacy of such third-party data for this case.   After all, the Magistrate Judge denied Mylan's discovery request "at this time."  (10/5/15 Tr. at 58:15-17).

Further, the Court finds that the Magistrate Judge's finding as to burden was not clearly erroneous.  The Magistrate Judge accepted Celgene counsel's representation—as an officer of the court—"that the pre-October 2009 data is stored on a legacy system, access to which or at least to cull out the records here, would give rise to undue burden."  (10/5/16 Tr. at 57:10-13).  In particular, Celgene's counsel represented that, "[i]n 2009, we moved to a new system called Oracle from the prior system" and, "to go back to the old system, which is as mothballed as it gets, we would have to . . . interview people" and "go around and search in the hope . . . that there was reports or something that would refer to any of this transactional data" such that there is "no hope, as I stand here today, that we could -- you know, that we could get" the requested data.  (*Id.* at 52:22-53:7).  Celgene's counsel stated that: "I'm representing to you, and I -- we can supplement the record any way you would like . . . I am representing to you as an officer of the court. We have this legacy system. That is the reason that in addition to saying we'll go back to 2010 for the statute of limitations, we can give you another 6 months back to 2009."  (*Id.* at 53:25-54:6).  So the Magistrate Judge had before him Celgene counsel's representation that the pre-2009 data is: "on an old legacy system . . . . So we'd have to go and do door-to-door searches, basically, to try and find, and hope we could find stuff that's as old as whatever it is . . . they want to go back . . . .  So before 2009, it is an enormous burden for us, and we can't -- we can't agree to undertake that."  (*Id.* at 44:17-44:24).

But it appears undisputed that Celgene never set forth such a particularized and specific basis for its undue burden contention before the October 5 hearing.  Mylan stresses on appeal

that Celgene "does not identify any instance in which it articulated the specific objection based on its claimed 2009 system change as a reason for limiting data discovery" before the October 5 hearing. (*See* Mylan Reply Br. at 6).

Nevertheless, in his discretion to manage discovery, his extensive familiarity with this case, and after lengthy oral argument, the Magistrate Judge accepted a plainly apparent basis for undue burden. And the Court does not find that he abused his discretion in doing so. *See Edwards v. Horizon Blue Cross Blue Shield of N.J.*, No. 08-6160, 2016 WL 755473, at *1 (D.N.J. Feb. 24, 2016) ("Where the appeal seeks review of a matter within the core competence of the Magistrate Judge, such as a discovery dispute, an abuse of discretion standard is appropriate."). After all, as in this case, the "deferential standard is especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *See id.* (quoting *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997)); *cf. In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 265 n.25 (3d Cir. 2009) ("None of these particular arguments was raised in Van Enterprises' written objection. Nonetheless, because of the magnitude of this settlement—both in terms of the amount of money involved and the number of persons affected—we will exercise our discretion to consider these arguments.").

To be sure, the Court is not persuaded otherwise by Mylan's protest that Celgene offered no testimonial evidence regarding a burden claim, only counsel's representations. (*E.g.*, Mylan Reply Br. at 1, 6-7). Mylan cites no law suggesting that the Magistrate Judge proceeded improperly in this regard. Thus, Mylan has not met its burden on appeal that the Magistrate Judge erred as a matter of law or abused his discretion by not requiring testimonial evidence.

In no way, however, does this Court's decision imply that a party who objects to discovery is relieved from its obligation to set forth why a particular discovery request is improper or unfitting.  In fact, the Court finds the timing of Celgene's explanation troubling.  The record on appeal does not appear to shed light on why Celgene failed to raise the particular basis for its burden objection before the October 5 hearing.  But, given the Magistrate Judge's factual determination as to the well-founded undue burden in this case, this Court will not reverse his determination even if the Court might have decided this matter differently.  *See Monaco*, 2007 WL 2139420, at *3.[8]

## VI.   Conclusion

In light of the above review, the Court finds that the Magistrate Judge did not abuse his discretion when conducting the required Rule 26 balancing and finding that the relevance of the requested discovery does not overcome the undue burden set forth by Celgene in this case.  Therefore, Mylan's appeal is DENIED and Magistrate Judge Hammer's discovery order, (D.E. No. 128 ¶ 4), is AFFIRMED.  An appropriate Order accompanies this Opinion.

 *s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[8] The Court is not persuaded otherwise by Mylan's reliance on case law standing for the unremarkable proposition that the deferential review of a magistrate judge's discovery order does not mean no review at all.  (*See* Mylan Reply Br. at 2 (citing *Nye v. Ingersoll Rand Co.*, No. 08-3481, 2011 WL 253957, at *7 (D.N.J. Jan 25, 2011) (reversing portion of magistrate judge's order because the magistrate judge "erred by foreclosing all deposition testimony" and allowing for "limited depositions" of two attorneys "for the purpose of verifying the authenticity of the documentary evidence and determine what, if any, legal advice they recall giving" to the plaintiff); *Delso v. Trs. of Ret. Plan for Hourly Emps. of Merck & Co.*, No. 04-3009, 2006 WL 3000199, at *3-4 (D.N.J. Oct. 20, 2006) (remanding where it was "unclear whether there was a conflation of the standards of granting discovery with the standard of reviewing an administrator's decision-making in ERISA cases"))).